UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| **INDIAN HARBOR INSURANCE COMPANY,** | ) ) ) ) ) | |
| **Plaintiff,** | ) ) | |
| v. | ) ) ) | Civil No. 20-11687 |
| **LYNNWAY AUTO AUCTION, INC., et al.,** | ) ) ) | |
| **Defendants.** | ) ) ) ) | |

**MEMORANDUM AND ORDER**

**CASPER, J.**                                                                                           September 21, 2021

## I.      Introduction

Plaintiff Indian Harbor Insurance Company ("Indian Harbor") filed this lawsuit against Defendants Lynnway Auto Auction, Inc. ("Lynnway"), BLR, LLC ("BLR"), Roger Hartwell ("Hartwell") (collectively, "Insureds"), and various, individual Defendants ("Victim-Defendants") (collectively, "Defendants"), seeking a declaratory judgment that it has no duty to defend or indemnify the Insureds under its Commercial General Liability Policy ("CGL Policy") regarding civil suits brought in Middlesex Superior Court ("Underlying Suits") by the Victim-Defendants related to an automobile accident ("Accident") that occurred at Lynnway and BLR's auction facility.  D. 1.  Indian Harbor has moved for judgment on the pleadings.  D. 59.  For the reasons discussed below, the Court ALLOWS the motion.

## II.     Standard of Review

Rule 12(c) allows a party to move for judgment on the pleadings at any time "[a]fter the pleadings are closed—but early enough not to delay trial."  Fed. R. Civ. P. 12(c).  A motion for

judgment on the pleadings pursuant to Fed. R. Civ. P. 12(c) is "ordinarily accorded much the same treatment" as a Rule 12(b)(6) motion. Aponte-Torres v. Univ. of P.R., 445 F.3d 50, 54 (1st Cir. 2006). To survive a motion for judgment on the pleadings, therefore, a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). Because a motion for judgment on the pleadings "calls for an assessment of the merits of the case at an embryonic stage," the Court "view[s] the facts contained in the pleadings in the light most favorable to the nonmovant and draw[s] all reasonable inferences therefrom" in their favor. Pérez-Acevedo v. Rivero-Cubano, 520 F.3d 26, 29 (1st Cir. 2008) (citation omitted).

On a Rule 12(c) motion, unlike a Rule 12(b) motion, the Court considers the pleadings as a whole, including the answer. See Aponte-Torres, 445 F.3d at 54-55. Those assertions in the answer that have not been denied and do not conflict with the assertions in the complaint are taken as true. See Santiago v. Bloise, 741 F. Supp. 2d 357, 360 (D. Mass. 2010). In addition, "[t]he court may supplement the facts contained in the pleadings by considering documents fairly incorporated therein and facts susceptible to judicial notice." R.G. Fin. Corp. v. Vergara-Nuñez, 446 F.3d 178, 182 (1st Cir. 2006). Still, "[l]ike Rule 12(b)(6), Rule 12(c) does not allow for any resolution of contested facts; rather, a court may enter judgment on the pleadings only if the uncontested and properly considered facts conclusively establish the movant's entitlement to a favorable judgment." Aponte-Torres, 445 F.3d at 54.

### III.     Factual Background

Unless otherwise indicated, the following summary is based upon the facts as alleged in Indian Harbor's complaint, D. 1, and to the extent they are not disputed, the facts contained in

Defendants' answers, D. 32; D. 43, and the exhibits referenced in or otherwise incorporated into these pleadings.

      A.      **The CGL Policy**

Indian Harbor issued the CGL Policy to Lynnway and BLR as named insureds for the policy period of June 23, 2016 to June 23, 2017, which also covered employees of Lynnway and BLR acting within the scope of their employment. D. 1 ¶¶ 42–43, 45. The CGL Policy covers "damages because of 'bodily injury' or 'property damage,'" and requires Indian Harbor to defend the Insureds in suits for such damages when the CGL Policy applies. Id. ¶ 46. The CGL Policy defines "bodily injury" as "bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time." D. 1-14 at 29.

The CGL Policy includes an "Aircraft, Auto or Watercraft" Exclusion ("Auto Exclusion"), which excludes coverage for:

> "Bodily injury" or "property damage" arising out of the ownership, maintenance, use or entrustment to others of any aircraft, "auto" or watercraft owned or operated by or rented or loaned to any insured. Use includes operation and "loading or unloading[.]"
>
> This exclusion applies even if the claims against any insured allege negligence or other wrongdoing in the supervision, hiring, employment, training or monitoring of others by that insured, if the "occurrence" which caused the "bodily injury" or "property damage" involved the ownership, maintenance, use or entrustment to others of any aircraft, "auto" or watercraft that is owned or operated by or rented or loaned to any insured.

Id. at 20.

The CGL Policy also contains a "Separation of Insureds" provision, which states:

> Except with respect to the Limits of Insurance, and any rights or duties specifically assigned in this Coverage Part to the first Named Insured, this insurance applies:
>
> a. As if each Named Insured were the only Named Insured; and

3

>    b. Separately to each insured against whom claim is made or "suit" is brought.

Id. at 29.

### B. Motor Vehicle Policies

Aside from the CGL Policy, the Insureds also purchased insurance policies for motor vehicle operations from Safety Insurance Company ("Safety") and Pilgrim Insurance Company ("Pilgrim"). D. 1 ¶ 29. Safety issued a Garage Liability Policy and Pilgrim issued an Auto Liability Policy, which provide coverage for damages that an insured must pay because of bodily injury caused by a covered auto and imposes a duty to defend for same. Id. ¶¶ 30–32, 38–40. Safety and Pilgrim have been defending the Insureds in the Underlying Lawsuits related to the Accidents. Id. ¶¶ 33, 41.

### C. The Underlying Suits

The Underlying Suits include the following allegations. On or around May 3, 2017, Lynnway conducted a wholesale auto action at its facility in North Billerica, Massachusetts. Id. ¶ 25. Lynnway employed Hartwell as a driver. Id. ¶ 26. That day, Hartwell was driving a 2006 Jeep Grand Cherokee when he lost control of the vehicle and struck several other cars and individuals, resulting in serious injury and the death of five individuals. Id. ¶ 26–28. Several complaints allege that that Hartwell had a suspended driver's license, see, e.g., D. 1-7 ¶ 27; D. 1-8 ¶ 19, that Lynnway and BLR negligently established practices that permitted employees to drive vehicles through crowds, see, e.g., D. 1-2 ¶ 12; D. 1-5 ¶¶ 9–10, and that Lynnway and BLR, which owned the auction facility, failed to properly implement safety precautions, including barriers and crosswalks, see, e.g., D. 1-2 ¶¶ 11–12; D. 1-4 ¶ 10–12; D. 1-7 ¶¶ 19–20.

**IV.     Procedural History**

Indian Harbor instituted this action on September 11, 2020, seeking a declaration that it has no duty to defend or indemnify the Insureds in the Underlying Suits. D. 1. Indian Harbor moved for judgment on the pleadings. D. 59. The Court heard the parties on the pending motion and took the matters under advisement. D. 70.

**V.      Discussion**

    **A.      Duty to Defend**

Under Massachusetts law,[1] to determine whether the insurer has a duty to defend, the Court must compare the facts alleged in the Underlying Suits against the Policy. See Open Software Found., Inc. v. U.S. Fid. & Guar. Co., 307 F.3d 11, 15 (1st Cir. 2002) (citing Continental Cas. Co. v. Gilbane Bldg. Co., 391 Mass. 143 (1984)). "An insurer has a duty to defend an insured when the allegations in a [underlying] complaint[s] are reasonably susceptible of an interpretation that states or roughly sketches a claim covered by the policy terms." Billings v. Com. Ins. Co., 458 Mass. 194, 200 (2010). The "general allegations" in the "underlying complaint need only show . . . a possibility that the liability claim falls within the insurance coverage." Id. (quoting Sterilite Corp. v. Continental Cas. Co., 17 Mass. App. Ct. 316, 319 (1983)).

"An insured generally bears the burden of proving that a particular claim falls within a policy's coverage, while an insurer has the burden of proving the applicability of a particular exclusion." Allmerica Fin. Corp. v. Certain Underwriters at Lloyd's, London, 449 Mass. 621, 628 (2007) (citations omitted). Courts must abide by the "straightforward meaning of policy language" when possible, Lexington Ins. Co. v. Gen. Accident Ins. Co. of Am., 338 F.3d 42, 48

---

[1] The parties do not dispute that Massachusetts law applies. See D. 60; D. 64; D. 67.

(1st Cir. 2003), but "[t]o the extent (if at all) that any ambiguity permeates a policy exclusion, it must be construed strictly against the insurer."  B & T Masonry Constr. Co. v. Pub. Serv. Mut. Ins. Co., 382 F.3d 36, 39 (1st Cir. 2004).

### B. Policy Coverage

As an initial matter, the allegations of the Underlying Suits are reasonably susceptible to an interpretation that they state a claim for coverage by the CGL Policy because the Underlying Suits allege negligence causing bodily injury and the CGL Policy provides that Indian Harbor has a duty to defend against any suit seeking damages for same.  See D. 1-14 at 17; D. 1 ¶ 28. Indian Harbor does not appear to dispute that the allegations in the Underlying Suits would be covered under the CGL Policy; rather, Indian Harbor asserts that the Auto Exclusion applies and precludes coverage for injuries related to the Accident.  See D. 60 at 13; D. 1 ¶ 56.

### C. Auto Exclusion's Applicability to BLR

As confirmed at the motion hearing, Defendants do not contest the applicability of the Auto Exclusion to Lynnway or Hartwell; they contend, however, that the Auto Exclusion does not apply to BLR.  See D. 67 at 10; D. 64 at 6.  In relevant part, the Auto Exclusion precludes coverage from "'Bodily injury' . . . arising out of the ownership, maintenance, use or entrustment to others of any . . . 'auto' . . .owned or operated by or rented or loaned to any insured."  D. 1-14 at 20.  Indian Harbor asserts that the Auto Exclusion applies to all Insureds because the Underlying Suits allege that Hartwell operated the Jeep as part of his employment with Lynnway and allege bodily injury "arising out of" Hartwell's operation of same (i.e., that it was the "source" of all alleged injuries).  D. 60 at 14–15.  As to BLR, Indian Harbor contends that the Auto Exclusion "applies to all bodily injury arising out of an automobile operated by 'any insured,'" which would include BLR, "not just to claims alleged against the insured who

operated the motor vehicle." Id. at 19. Indian Harbor also contends that the allocation of risks favors exclusion from the CGL Policy since the Safety and Pilgrim policies provide coverage to BLR for auto-related injuries. Id. at 20. Defendants counter that, given the Separation of Insureds provision, and in light of Worcester Mut. Ins. Co. v. Marnell, 398 Mass. 240 (1986) and subsequent cases, the Auto Exclusion does not apply to BLR. See D. 67 at 10. Defendants further contest the applicability of the Auto Exclusion to BLR, arguing that the claims against BLR, which they construe as premises liability and negligent design, are "separate and distinct from the use or operation of the motor vehicle involved in the accident," and that the allocation of risk warrants coverage because "the asserted claims against BLR for premises liability are precisely the reason that BLR procured this insurance from Indian Harbor." D. 67 at 12–13, 18.

        1.    *Marnell's Application*

Marnell addressed an insurer's duty to defend under the Marnells' homeowner's insurance for a claim of negligent supervision of their underage son after he left a party at their home, operated his vehicle while intoxicated, and struck and killed the intestate. Marnell, 398 Mass. at 241. The insurer there argued that it had no duty to defend against the negligent supervision claim because the policy's motor vehicle exclusion precluded coverage when "bodily injuries for which coverage is sought arose out of the 'use . . . of . . . a motor vehicle owned or operated by . . . any insured'" and the Marnells' son was insured under the policy. Id. at 242–43 (alteration in original). That policy, however, contained a severability clause, meaning "that each insured [must] be treated as having a separate insurance policy." Id. at 244. The court agreed that "without the severability provision a literal reading of the motor vehicle exclusion by itself preclude[d] the Marnells from coverage under the policy because Michael Marnell, an insured owned and operated the motor vehicle involved in the fatal accident" but

7

nonetheless held that the severability of insurance clause made coverage available to the Marnells because the motor vehicle exclusion referred only to the person claiming coverage under the policy (i.e., the Marnells, who did not own or operate the vehicle).  See id. at 244–45; Merrimack Mut. Fire Ins. Co. v. Sampson, 28 Mass. App. Ct. 353, 357, 357 n.9 (1990) (explaining that in Marnell "because of the severability clause, the term 'any insured' in the automobile exclusion was read as 'the insured claiming coverage'").

Marnell's holding also "turned on the allocation of risks between homeowner's coverage and automobile liability insurance."  Hingham Mut. Fire Ins. Co. v. Smith, 69 Mass. App. Ct. 1, 8 (2007).  In other words, "[t]he homeowner who owns and operates an automobile ordinarily procures automobile insurance and also determines the amount of that coverage [and] can reasonably be expected to rely on that coverage for activities related to the ownership and operation of a motor vehicle unless . . . a premium is paid for supplemental automobile insurance under the homeowner's policy."  Town of Ayer v. Imperial Cas. & Indem. Co., 418 Mass. 71, 73–74 (1994).  In a case like Marnell, however, "when the homeowner is subjected to claims as a social host or negligent supervisor for actions of persons operating vehicles owned by others, the homeowner does not usually control the amount of automobile insurance covering the operator or owner of such vehicles."  Id. at 74.  Moreover, "the alleged negligent supervision took place in the parents' home, and 'the manifest design of homeowners' insurance is to protect homeowners from risks associated with the home and activities related to the home.'"  First Specialty Ins. Corp. v. Pilgrim Ins. Co., 83 Mass. App. Ct. 812, 817 (2013) (quoting Marnell, 398 Mass. at 245).  As opposed to other claims that are "derivative of the operation of a motor vehicle, the negligent supervision cause of action was 'separate and distinct from the use or operation of an automobile.'"  Id.

Massachusetts courts have not applied Marnell universally, specifically when the policies are materially different from the policy that was at issue in that case or when the allocation of risk does not favor application of it.  See id. at 818–19; Mass. Prop. Ins. Underwriting Ass'n v. Berry, 80 Mass. App. Ct. 598, 602 (2011).  Both circumstances are present here.

### 2. Policy Language is Materially Different in Auto Exclusion

The Auto Exclusion in the CGL Policy is materially different from that in Marnell.  The Auto Exclusion here contains a second paragraph, which states, in relevant part, that the Auto Exclusion "applies even if the claims against any insured allege negligence or other wrongdoing in the supervision, hiring, employment, training or monitoring of others by that insured," if the Accident that caused bodily injury "involved the ownership, maintenance, use or entrustment to others of any [auto] that is owned or operated by or rented or loaned to any insured."  D. 1-14 at 20.  Post-Marnell, the Appeals Court addressed an identical auto exclusion in a CGL policy and explained that the second paragraph was added to address "the precise situation" that Marnell created.  First Specialty Ins. Corp., 83 Mass. App. Ct. at 818.  Accordingly, this paragraph broadens the exclusion to apply to "any insured" under the policy, which Marnell read out of the exclusion because of the separation of insureds provision.  See id. at 818–19; Massachusetts Prop. Ins. Underwriting Ass'n, 80 Mass. App. Ct. at 603 (explaining that despite severability clause, "the words 'any person' unambiguously extend to 'any person,' not merely to a named insured," in light of language added after Marnell).

As the Appeals Court explained, "the second paragraph clearly envisions that two different insureds are involved."  First Specialty Ins. Corp., 83 Mass. App. Ct. at 818–19.  Thus, the Auto Exclusion applies if "(1) claims are brought against 'any insured' alleging [negligence or other wrongdoing in the supervision, hiring, employment, training or monitoring of others] by

9

'that insured,' and (2) the occurrence underlying those claims involved an automobile owned or operated by 'any insured.'" Id. Here, the Underlying Suits allege facts that (1) give rise to claims or negligent hiring or supervision against BLR, see, e.g., D. 1-2 ¶ 12; D. 1-5 ¶¶ 4–5, 9–10; D. 1-3 ¶ 61; and (2) that Hartwell, an insured, operated the Jeep involved in the Accident, see D. 1 ¶ 28.

Despite these developments, Defendants attempt to fit this case into Marnell's framework. First, Defendants argue that the Underlying Suits allege claims against BLR that "are predicated upon theories of premises liability," which are "separate and distinct from the use of operation of the motor vehicle involved" in the Accident. See D. 67 at 12, 17–18; D. 64 at 9. Such argument, however, overlooks the broad language of the Auto Exclusion, which applies to bodily injury "arising out of the ownership, maintenance, use or entrustment to others" of an auto. See D. 1-14 at 20. "'Arising out of' exclusions . . . [eliminate] coverage regardless of the theories of recovery asserted if," as here, "the injury or damage flows from or originates from events or causes identified in the exclusion." Massachusetts Prop. Ins. Underwriting Ass'n, 80 Mass. App. Ct. at 602, 605 n.7 (concluding that auto exclusion applied when bodily injury in the covered occurrence "arises out of" the use of an auto "regardless of whether other covered causes may have contributed to the injury") (citing Bagley v. Monticello Ins. Co., 430 Mass. 454, 457 (1999)); see Atain Specialty Ins. Co. v. Davester LLC, 518 F. Supp. 3d 551, 556 (D. Mass. 2021) (quoting Bagley to explain that "[i]t is the source from which the plaintiff's personal injury originates rather than the specific theories of liability alleged in the complaint which determines the insurer's duty to defend, and concluding that because underlying complaint "seeks damages for bodily injuries sustained after [claimant] was over by [a] car, the bodily injuries arise out of or are connected with an auto and are excluded from coverage"); Specialty

Nat. Ins. Co. v. OneBeacon Ins. Co., 486 F.3d 727, 734 (1st Cir. 2007) (concluding that auto exclusion applied, despite assertion that underlying complaint sought damages "solely on a theory" of failure to place requisite warning signs on roadway, when source of injuries was placement (i.e., use) of vehicle); Phoenix Ins. Co. v. Churchwell, 57 Mass. App. Ct. 612, 616 (2003) (noting that "it would be difficult to separate [the] negligent supervision claim from [the] operation of [the] motor vehicle and to hold that [the] injuries did not arise out of the operation of a motor vehicle"); Com. Union Ins. Co. v. Liberty Mut. Ins. Co., No. 931376, 1995 WL 1146227, at *3 (Mass. Super. Aug. 11, 1995) (concluding that despite "denomination . . . as a premises liability claim," the personal injury alleged is "due to being struck by a motor vehicle," which is "precisely the type of loss for which motor vehicle insurance is obtained . . . [and] not the type of loss fitting the expectation of a general liability policy"). Second, Defendants argue that there is no nexus between the operator, Hartwell, and BLR, or between the ownership and use of the Jeep (and other commercial autos) and BLR. D. 67 at 19; D. 64 at 7. But the addition of the second paragraph eliminates the need for an ownership or control nexus, as the Auto Exclusion here "relieves the insurer from coverage for injuries arising out of the use of a motor vehicle by any person, rendering irrelevant any severability of insurance clause." Massachusetts Prop. Ins. Underwriting Ass'n, 80 Mass. App. Ct. at 602 (distinguishing Marnell).

        3.     *Allocation of Risk Favors Exclusion*

Although not dispositive by itself, the allocation of risk also does not favor application of Marnell, as BLR obtained separate coverage for auto-related accidents. BLR is insured under the Safety Garage Liability Policy and the Pilgrim Auto Liability Policy for damages that an insured must pay because of bodily injury caused by a covered auto. See D. 1 ¶¶ 30–32, 38–40. Safety and Pilgrim have been defending BLR in the Underlying Suits related to the Accidents. Id. ¶¶

33, 41; D. 43 ¶¶ 37, 41 (admitting that Safety and Pilgrim have been defending the Insureds in the Underlying Suits); see First Specialty Ins. Corp., 83 Mass. App. Ct. at 820 (explaining allocation of risk supported application of auto exclusion when insured "obtained an automobile policy from [one company] and a CGL policy from [another]" where the automobile policy provided coverage for injuries related to auto accident and "[t]he CGL policy, in contrast, contained a broad automobile exclusion"); Marnell, 398 Mass. at 245  (purpose behind auto exclusion to "prevent[ ] the homeowners' policy from providing additional insurance, without a premium, to an insured" when vehicle is involved in an accident causing bodily injury). Defendants assert the same premises liability argument discussed above with respect to the allocation of risk, see D. 67 at 13, 17, but for the same reasons discussed above, that argument is not persuasive; exclusion from coverage is determined here by the source of injury, not the theories of liability as alleged.

## VI.   Conclusion

For the foregoing reasons, the Court ALLOWS Indian Harbor's motion for judgment on the pleadings, D. 59.

**So Ordered.**

                                                  /s/ Denise J. Casper
                                                  United States District Judge